NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ROBERT E. BRENNAN,** | : | Civil Action No. 04-4719 (GEB) |
| Petitioner, | : | |
| v. | : | |
| **UNITED STATES OF AMERICA,** | : | MEMORANDUM OPINION |
| Respondent. | : | |

**BROWN, Chief District Judge**

    This matter comes before the Court upon Motion by Petitioner Robert E. Brennan [hereinafter "Petitioner"] seeking *habeas corpus* relief pursuant to Title 28, United States Code, Section 2255 [Docket Entry ##'s 1 and 13]. The Court, having considered the parties submissions and having decided this matter without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, will deny Petitioner's Motion.

**I.**     **Background**

    The factual and procedural background of Petitioner's underlying criminal case has been detailed at length during the course of Petitioner's prosecution, trial, sentencing and appeal. In the interest of brevity, the Court will reference and recount pertinent facts from the Third Circuit Court of Appeal's factual and procedural history section in its appellate review of Petitioner's trial and sentencing. Those are as follows:

> Robert Brennan has a long history of improper and fraudulent activities in the securities industry.  In 1974, he was suspended from selling mutual funds when his improper activities were brought to the attention of the SEC.  Brennan later founded First Jersey Securities, Inc. which served as a brokerage and underwriter.  The SEC brought administrative proceedings against Brennan and First Jersey for violation of federal securities laws in 1978 . . . [t]hese proceedings were settled, but on October 31, 1985, the SEC once again sued Brennan and First Jersey for new fraudulent market activities and stock manipulation.  This suit was pending for almost ten years . . . on July 14, 1995, the United States District Court for the Southern District of New York entered judgment against Brennan and First Jersey [in an amount of] $22,288,099 in profits gained from their fraudulent activity and pay prejudgment interest in the amount of $52,689,894 . . . On August 7, 1995, a few weeks after the judgment was entered in the Southern District of New York, Brennan filed for bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey under Chapter 11 of the Bankruptcy Code.  Brennan failed to disclose his ownership of [certain bearer bonds with a face value of $3,975,000 Brennan had placed with a company in the Isle of Man which specialized in assisting individuals with shielding their assets from potential creditors] in his bankruptcy petition or the attached schedules.  On September 4, 1995, while in Law Vegas, Nevada, Brennan cashed in approximately $500,000 in casino gaming chips at the Mirage hotel.  Then, in October of 1995, he . . . directed [the company] to cash in the bearer bonds . . . the proceeds [of which] were later invested in various entities at Brennan's direction.
>
> [Under the terms of his bankruptcy and as a debtor in possession], Brennan had an obligation to file monthly operating reports with the Bankruptcy Court.  He failed to disclose the transactions involving the bearer bonds, as well as the casino chips and the cash received in exchange for his casino chips . . .
>
> [Brennan was indicted in New Jersey District Court on July 19, 2000, which was superceded on November 1, 2000 and again on December 20, 2000, charging the concealment of the aforementioned casino chips, bankruptcy fraud, concealment of the bearer bonds and money laundering.  In total, thirteen counts were lodged against Petitioner].  On April 16, 2001, a jury convicted Brennan of seven of the thirteen counts . . . On July 26, 2001, the District Court sentenced Brennan to 110 months imprisonment and a five year term of supervised release.

<u>United States v. Brennan</u>, 326 F.3d 176 (3d Cir. 2003).  In his appeal, Petitioner asserted that his convictions should be reversed because of alleged prosecutorial misconduct, lack of evidence, a coercive supplemental charges to jury and sentencing errors, including an alleged error in the

calculation of amount of loss, in the application of a fraud enhancement, and in the assessment of a two-point enhancement for obstruction of justice. (Id.). The Third Circuit rejected Petitioner's arguments and affirmed this District Court on April 7, 2003. (Id.).

Meanwhile, during the course of Petitioner's trial, sentencing and appeal, the District Court for the Southern District of New York, which previously had entered a $75 million dollar judgment against Petitioner, pursued and ultimately cited Petitioner for criminal contempt. Petitioner pled guilty to the citation, and received a 36 month sentence to run consecutive to the 110 month sentenced this Court previously imposed. (Pet. Suppl. Brf., pp. 4-7). On September 7, 2004, Petitioner filed the instant motion. (See Docket Report).

## II.     Petitioner's Motion Pursuant to 28 U.S.C. § 2255

In the instant motion for relief, Petitioner argues that both his trial and appellate counsel were ineffective as they each individually failed to raise the then recent United States Supreme Court holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). Specifically, Petitioner argues that on June 26, 2000, the Supreme Court issued its holding in Apprendi, which found that any fact which enhances a defendant's sentence beyond the statutory maximum must be decided by a jury and proven beyond a reasonable doubt. Petitioner further argues that on July 26, 2001, Petitioner was sentenced. Petitioner asserts that he had notified trial counsel of the ruling in Apprendi and had asked that trial counsel argue that the then mandatory guidelines were contrary to Apprendi. Petitioner argues that trial counsel failed to make such an argument at sentencing, and that error resulted in ineffective assistance of counsel.[1] Additionally, Petitioner argues,

---

[1] Trial counsel has provided Petitioner with an affidavit confirming that he did not raise Apprendi during the sentencing, and that that failure prejudiced Petitioner.

-3-

appellate counsel likewise failed to raise <u>Apprendi</u> during Petitioner's appeal, despite Petitioner's requests to do so.[2]

Petitioner argues that although a counsel's failure to anticipate changes in the law is not unreasonable under the <u>Strickland</u> standard, a counsel's failure to honor his or her client's simple and reasonable request is, pursuant to the Third Circuit Court of Appeals holding in <u>Government of Virgin Islands v. Forte</u>, 865 F.2d 59, 63 (3d Cir. 1989).

Petitioner further argues that had both counsels' errors not occurred, the outcome of Petitioner's sentencing and appeal would have been different. Finally, Petitioner asserts that <u>Apprendi</u> and its progeny created a "watershed" change that must be applied retroactively to his case.

**III.   Analysis**

     ***A.   Standard of Review For 28 U.S.C. § 2255***

Section 2255 of Title 28, of the United States Code, permits a court to vacate, correct or set aside a sentence that:

> [W]as imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. However, "section 2255 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" <u>United States v. DeRewal</u>, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting <u>Barton v. United States</u>, 791 F.2d 265, 267 (2d Cir. 1986), <u>cert. denied</u>,

---

   [2] Appellate counsel has also provided Petitioner with an affidavit that confirms that she did not raise <u>Apprendi</u> during Petitioner's appeal, although he had requested that she do so, and that that error resulted in "ineffective" representation on behalf of Petitioner.

511 U.S. 1033 (1994)).  Moreover, if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show "cause" excusing his procedural default and "actual prejudice" resulting from the alleged error or violation.  Henry v. United States, 913 F. Supp. 334, 336 (M.D. Pa. 1996), aff'd, 96 F.3d 1435 (3d Cir. 1996); see also United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) (holding that the "cause and prejudice" standard set forth in United States v. Frady, 456 U.S. 152 (1982), "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed.").  However, a petitioner need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel for the first time in a collateral attack.  DeRewal, 10 F.3d at 104.

     B.    *Ineffective Assistance of Counsel*

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense."  Id. at 687.  In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  State v. Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also  Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519 U.S. 1020 (1996).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that  counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in

raising the arguments on appeal, that the conviction would have been reversed on appeal. See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

### C. *Apprendi, Blakely and Booker Holdings*

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that at sentencing, a judge could enhance a sentence based on facts not admitted by the defendant or found by the jury, so long as the enhancement did not increase the defendant's sentence beyond the prescribed statutory maximum. See Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005).

In Blakely v. Washington, 542 U.S. 296 (2004), the next Supreme Court case to address the Sixth Amendment issue, the Supreme Court held that "'the statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (Id. at 303-04) (emphasis in original). However, the Court limited the ruling to a different statutory scheme.

On January 12, 2005, the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) extended the holding in Blakely to the Federal Sentencing Guidelines.

After Apprendi was decided, the Third Circuit held that it set forth a new rule of criminal procedure, not retroactively applicable. United States v. Swinton, 333 F.3d 481 (3d Cir. 2003). After Blakely and Booker, the Third Circuit likewise found that they were new rules of criminal procedure under the Teague v. Lane, 489 U.S. 288 (1989) analysis, and therefore, not retroactively applicable "to those cases which have become final before the new [rule is] announced." Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005). The Third Circuit also found that the date the Booker ruling was released (not the Blakely ruling) would be "the

appropriate dividing line" for cases that became final for applicability purposes. Id. at 612, n.1.

In accordance with the Supreme Court's ruling in Booker and its companion case United States v. Fanfan, 543 U.S. 220 (2005), the provision of the Sentencing Guidelines which made them mandatory, § 3553(b)(1), was severed from the Sentencing Reform Act of 1984. The United States Sentencing Guidelines thereafter became advisory.

### D.  *Counsels were not Ineffective for Failing to Raise Apprendi During Trial or Appeal*

Both trial and appellate counsel failed to raise Apprendi at either Petitioner's sentencing or appeal, to which both lawyers attest. However, "[f]ailure to raise a meritless [Apprendi] argument is not grounds for finding ineffective assistance of counsel." Atta v. U.S., 2005 WL 1607016 (citing Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996). Therefore, the question becomes whether an Apprendi claim would have been meritless at either Petitioner's sentencing or the appeal.

Here, Petitioner was sentenced after the Supreme Court's ruling in Apprendi. As such, Apprendi, if implicated, would have been appropriate for both trial and appellate counsel to raise. However, Apprendi did not implicate the Sentencing Guidelines. This Court was able to make findings which enhanced Petitioner's sentence, without violating Apprendi, as long as Petitioner's sentence did not go beyond the statutory maximum, which it did not. Booker and Blakely were still years away from being decided by the Supreme Court, and there was no reason to know or assume that the Supreme Court was going to apply Apprendi to the Sentencing Guidelines, thus making them advisory as opposed to mandatory. Therefore, because this Court's sentencing of Petitioner did not implicate Apprendi, neither trial counsel nor appellate

counsel were ineffective for failing to raise Apprendi during either the trial or appeal. Additionally, because Booker and Blakely were decided well after the time the Third Circuit issued its Opinion with regards to Petitioner's appeal, and because they may not be retroactively applied, Petitioner cannot benefit from their application. Although Petitioner asserts that Apprendi and its progeny should be found to have created a watershed change, thus requiring its application retroactively, such application may not occur based upon the Third Circuit's holding in Lloyd, a fact that Petitioner readily admits. Even if this Court could apply the aforementioned retroactively, the Court considers the sentence Petitioner received reasonable and appropriate given all the circumstances and the 18 U.S.C. § 3553(a) factors.

Petitioner further asserts that because trial and appellate counsel failed to raise Apprendi after he specifically requested it, both have violated the holding of Government of Virgin Islands v. Forte, 865 F.2d 59, 63 (3d Cir. 1989). In Forte, the Third Circuit Court of Appeals held that counsel may be considered deficient where an attorney fails to honor a client's simple and reasonable request to preserve his rights based upon an issue that is pending before the United States Supreme Court. Id.

However, the Third Circuit in Forte stressed that its holding was to be very narrowly read. Further, Forte presented a situation in which a potential right (Batson) was being decided by the Supreme Court *at the time* of defendant Forte's jury selection and trial, when it would have been directly applicable. Here, at the time of Petitioner's sentence and appeal, Apprendi was, as previously stated, inapplicable, and neither Booker nor Blakely were pending before the Supreme Court. Indeed, they were years away from being considered. Therefore, Forte is inapposite.

**IV.   Conclusion**

Accordingly, Petitioner's motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255 is denied with prejudice and the Government's motion to dismiss is granted. An appropriate form of Order accompanies this Memorandum Opinion.

Date:   May 9th, 2007

s/Garrett E. Brown, Jr.
**HONORABLE GARRETT E. BROWN, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**